UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00810-H

ROSE POWERS                                                             PLAINTIFF

v.

UNITED PARCEL SERVICE                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rose Powers, is a United Parcel Service ("UPS") employee, who alleges that she was denied promotions in 2010 and 2011 due to her race.[1] Previously, UPS moved for summary judgment, which the Court denied because Plaintiff wanted to complete discovery. During the intervening time Plaintiff does not appear to have taken more discovery. UPS has again moved for summary judgment. At first Plaintiff did not respond and then asked for an extension of time which this Court granted. Now the matter is fully briefed. This matter is fairly straightforward. For the reasons that follow, the Court concludes that Powers cannot maintain her claim.

I.

UPS hired Powers in 1986 as a Document Review Auditor at the Company's Ashbottom Facility. Since then she has held numerous jobs which have generally advanced her within the UPS organization. Only the more recent history is pertinent to this case.

After 2004 Powers held the position of a Senior Administrative Assistant in the Publications Department. In 2007, Powers applied for a Records Analyst position. The Records

---

[1] Powers sometimes mentions that she has asserted an age discrimination claim as well. However, she has presented no argument or evidence on that claim. In any event, the analysis on the racial discrimination claim would resolve any age claim, even assuming a *prima facie* case.

Analysts analyze, audit and maintain training records to meet Federal Aviation Regulations ("FAR") and UPS legal compliance. As part of the selection process she took a computer assessment and other assessments specific to the Records Analyst job. She also was interviewed by Dawn McAfee and Michael Sloat, who – at the time – worked as the Records Supervisor. At the end of the interview process, McAfee and Richter selected an individual named Denise Fleig. Fleig's overall performance during the selection process surpassed the other candidates, including Powers. At the end of the interview process, McAfee completed an interview worksheet that summarized Powers' strengths and weaknesses. It stated the following about Powers: "[Powers] has been with the airline for several years, I would have expected her airline knowledge to be more in depth. *Focus more on details*."

In 2010, another Records Analyst opening occurred. Each applicant was required to take a Microsoft Word and Excel assessment. Over 40 individuals applied for the position. The selection committee decided that, due to the number of applications received, it would only consider those applicants who scored at least "basic" in Microsoft Excel and Word. Powers only scored a 40% in Microsoft Excel and a 60% in Microsoft Word. She was one of 25 applicants who were not allowed to move forward in the application process. Twenty of those individuals were white.

The 2010 Records Analyst position went to an employee named Wendy Olsen. Olsen passed the computer assessment. She scored "intermediate" in both Microsoft Excel and Word programs. She also scored the highest on the assessments given. Her overall performance surpassed the other finalists; thus, she was deemed the most qualified candidate.

Around February 2011, Powers was transferred to the Records Department. Wanda

Layman, a member of Powers' management team, and McAfee, who had fully transitioned into the Records Supervisor position, decided to move Powers to the Records Department. Powers retained some of her job duties from the Publications Department. She also took on some tasks that had previously been performed by Records Analysts.

In November 2011, Powers and 44 other individuals applied for an open Records Analyst position. Of the 44, only ten qualified to move to the assessment/interview phase. To reach that phase, the applicants had to receive a score of "intermediate" or higher in Microsoft Word or Excel. Powers scored "intermediate" in Microsoft Word, but less than "basic" in Microsoft Excel. Nevertheless, she did qualify to move to the assessment/interview phase.

Powers and the other finalists took a variety of written assessments targeted to evaluate skills UPS deemed pertinent to the Records Analyst position. In addition to taking written assessments, the nine finalists interviewed with McAfee and Tony Biven, an HR representative.

Powers and the other eight finalists were required to take written assessments targeted to evaluate skills UPS deemed pertinent to the Records Analyst position. One of the assessments focused on "airline knowledge." Candidates were asked such things as the "what class of medical certificate are captains required to maintain?" and "what type of information can be found in the Flight Operations Manual?" Another portion of the assessment focused on "writing skills." Candidates were asked to write a brief memo to a UPS pilot explaining the due date for his home studies. Two of the assessments focused on "attention to detail." On one, candidates had to proofread a letter. The letter contained a total of 33 errors. Candidates received a score based upon the number of errors found. The graders also noted if the candidates incorrectly identified additional, non-existing errors. The other "attention to detail" assessment required

applicants to identify those Crewmembers out of a group of ten who were due for a "line check." Candidates received a numerical score on that assessment based on how many Crewmembers they correctly identified. The candidates were also asked to list five methods they would use to research an issue they did not know how to answer.

The nine finalists also interviewed with McAfee and Tony Biven, an HR representative. At the end of the interview process, the selection committee chose James Osbourne. However, Osbourne turned the job down. UPS offered the position to the second highest scorer, an employee named Staci Goff.

Thereafter, Powers filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that UPS did not promote her due to her age and race. The EEOC issued a Dismissal and Notice of Rights to Sue in July 2012. Then Powers filed the current lawsuit.

II.

To succeed on her failure to promote claim based upon circumstantial evidence, Powers must show that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000).[2] UPS then has the opportunity to show that it had a legitimate, non-discriminatory reason for its decision. *Id.* at 1021. The burden then shifts back to Powers to show that UPS' proffered reason is a pretext for race discrimination. *Id.*

---

[2] Discrimination claims under KRS Chapter 344 are governed by the same legal framework as claims under Title VII. *Ammerman v. Bd. of Educ. of Nicholas Cnty., Ky.*, 30 S.W. 3d 793, 797-98 (Ky. 2000) (The Kentucky Act is similar to Title VII of te 1964 federal civil rights act and should be interpreted consistently with federal law).

A.

Due to the large applicant pool for the 2010 position, the selection committee for the 2010 position decided to initially narrow the pool by assessing the candidates' computer skills. They only considered those candidates who scored a level of "basic" or above in both Microsoft Word and Microsoft Excel. This was due, in large part, to the fact that the Records Analyst job requires a great deal of computer knowledge.

Twenty-five candidates failed to meet the basic requirements for the position, including Powers. Wendy Olsen, the employee ultimately selected, scored "intermediate" in both Microsoft Word and Microsoft Excel. Therefore, she moved forward for consideration in the selection process. Powers did not move forward. By the end of the interview process, Olsen was deemed the most qualified candidate.

Powers cannot establish a prima facie case of discrimination as to the 2010 Records Analyst position because she lacked the stated requisite computer qualifications for the job. Powers has not put forth any evidence or argument suggesting that the job criteria was invalid or racially slanted in some manner. White employees were disqualified for failure to meet the basic requirements of the position as well. Powers' failure to promote claim regarding the 2010 position fails as a matter of law. *See, e.g., Cleveland v. S. Disposal Waste Connections*, 491 Fed. App'x 698, 703-04 (6th Cir. 2012); *Kariuki v. Comair, Inc.*, 832 F. Supp. 2d 771, 784-85 (E.D. Ky. 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2007 WL 4210467, *11 (Ky. Ct. App. Nov. 30, 2007).

B.

Powers was not selected for the 2011 Records Analyst position because she was not the

6

most qualified candidate among a group of competitive applicants.

Osbourne, the candidate initially selected, had worked at UPS for over 11 years. Although Osbourne had not worked in the Records Department, he had performed work for UPS' airline and demonstrated that he was well versed on airline terminology, which was one of the job requirements. Osbourne also demonstrated his strong computer skills. He scored "advanced' in both Microsoft Word and Microsoft Excel. Further, he scored higher than the other eight candidates – including Powers – on at least two of the three numerically scored assessments. Powers – who testified that she had been doing "line checks" in her senior Administrative Assistant position – only scored a 50% on the portion of the assessment that required candidates to identify those individuals who were due for a line check. Osbourne, however, scored a 100% on this assessment.

Goff, the employee who ultimately filled the position, had worked at UPS for approximately 19 years at the time she applied for the Records Analyst position. At the time of her application, she worked as a Penalty Specialist. Goff had to research, report and analyze regulatory requirements involving international shipments, flights and personnel requirements. She also had to determine the legitimacy and outcome of fines and penalties issues by Customs and Border protection on behalf of UPS and its Air Cargo Divisions. Goff outscored Powers on both of the "attention to detail" portions of the exam, which was a critical part of the assessment, given the level of analysis and auditing required. Powers scored in the low-mid 50's on both portions of the assessments devoted to this skill set.

Soon after Goff was selected, another Records Analyst position became available due to a retirement. Because the position opened so close in time to the other UPS decided to select

the next highest performing candidate from the November 2011 pool. That person was Correna Reichle, who, at the time, was employed as the Administrative Assistant to the Flight Training Manager. Reichle scored "intermediate" in both Microsoft Word and Microsoft Excel. Notably, she outscored Powers on all three portions of the numerically scored assessments. Her overall performance during the selection process made her the next most qualified candidate for the position. Hence, she was selected to fill the open spot.

### III.

Powers' only real arguments are that she has been a long-time valued UPS employee who deserved a promotion and that UPS has not demonstrated that "race or age was not a material factor in the selection process to the position of Records Analyst sought by Rose." Plaintiff's Response Memorandum. However, the burden rests upon Powers to prove this, not UPS.

Courts have clearly established that employers have the right to select the candidate they deem most qualified for the job without being hauled in front of a jury to explain their rationale for doing so. *See, e.g., Risch v. Royal Oak Police Dep't,* 581 F.3d 383, 399 (6th Cir. 2009) (citations omitted); *Hawkins v. Memphis Light Gas & Water*, 520 Fed. App'x 316, 320 (6th Cir. 2013); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). In doing so, UPS had the right to establish the qualifications for the Records Analyst position. The Court finds no inference of racial animus behind UPS' decision.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Company's motion for summary judgment is SUSTAINED and Powers' claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record